## SUCCESSION OF VICTOR DUCLOS.

Where witnesses differ as to the charges made by physicians, the correct rule is to allow the lowest estimate.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Drouett*, for appellant. *Guillet*, *Soulé* and *Lugenbühl*, for opponents and appellees.

BUCHANAN, J. The deceased, *Victor Duclos*, died of a pleurisy or "fluxion de poitrine." He was ill from the 30th November to the 29th December, 1854.

On the 3d December, *Dr. Anfoux*, who had been his family physician for several years, paid him his first professional visit in this, his last illness, and visited him *several times a day* from that period to the day of his death.

On the 4th December, *Dr. Natili* was called in by the family to consult with the attending physician upon the state of the patient. A consultation took place on that day, and another on the 5th December, at which time, when the consultation was over, *Dr. Natili* told a witness, the deceased's house-keeper, that his services were no longer required, and that he would not return. It appears however that *Dr. Natili* did visit the deceased every day afterwards until his death.

The charge made by these physicians for their professional services to deceased in his last illness, is as follows:

| | |
|---|---:|
| *Dr. Anfoux*—80 visits, day and night.......................... | $175 |
|     80 consultations................................ | 300 |
|           Total.......................... | $475 |
| *Dr. Natili* (without specifications)........................... | $320 |

The testamentary executor has appealed from a judgment which reduced these charges to $195 severally; and upon a review of the evidence, we conclude that a further reduction ought to be made.

As to the number of visits paid to the deceased during his last illness by these two physicians, the proof is as follows: *Celina Dumas*, the housekeeper of deceased, swears, as already noticed, that *Dr. Anfoux* visited deceased *several* times a day, from the 3d December to the 29th of the same month, inclusive, or twenty-seven days.

*Jean Bidegaray* proves that he saw the two physicians calling twice on the same day, morning and evening. He saw them come one after the other.

*Celina Dumas* proves that Drs. *Anfoux* and *Natili* only met together, or called at the same time to visit the patient, five times after the consultation of the 5th December.

Upon this evidence, we fix the number of visits of the physicians as follows:

*Dr. Anfoux*, twice a day for 27 days, or fifty-four visits.

*Dr. Natili*, twice a day for 26 days, or fifty-two visits.

Of these visits, only two for each are entitled to rank as consultations, under the *evidence*. As to the pretension that, from the moment more than one physician is called in, and attends regularly upon a case, every visit made by every physician employed, takes rank as a consultation, it cannot be listened to, even supposing that the visits are made at the same hour, so that the physicians

actually meet at the patient's bedside. The difference of the charge for what is technically styled a consultation, and for a simple visit, would make it ruinous to most patients and unreasonably onerous to all, to avail themselves of the lights of more than one of the faculty in time of need.

As to the value of the medical attendance thus proved, there is very considerable discrepancy between the witnesses. *Dr. Joubert* taxes the ordinary visits of physicians to a patient, at two dollars for the first visit, and one dollar for each subsequent one. By *Dr. Daret*, such visits are taxed at three dollars each, without distinction.

For consultations, *Dr. Joubert* allows $10 for the first, and $5 for each subsequent consultation, to each physician assisting. *Dr. Daret* allows $10 for each consultation.

We think the correct rule, as settled by authority, is to allow the lowest estimate. *Villalobos* v. *Mooney*, 2 L. R., 333.

According to this rule, *Dr. Anfoux* will be entitled to sixty-eight dollars, and *Dr. Natili* to sixty-six dollars, for medical attendance on the deceased in his last illness.

There is no proof in support of items 3, 4 and 5 of the appellee *Anfoux's* account, which items were properly rejected by the court below.

The sixth and last item of *Dr. Anfoux's* account is for medicines furnished from *Dr. Anfoux's* apothecary's shop to the deceased, in the year 1854, $180 15 cts. The bill of particulars of this item includes also a balance from the year 1853 of $28 15, and all the remaining charges have no date whatever. They are styled in the account medicines furnished in 1854—not medicines furnished during the last illness. In fact, there is no proof nor even allegation which entitles this apothecary's bill to the privilege given it by the judgment of the District Court. The proof of the correctness of the bill, even as an ordinary debt, is of the vaguest description. The clerk of the apothecary who testifies, came into his employment after *Duclos'* death, and merely proves that the charges were made by a previous clerk, who was dead. Some prescriptions were produced, it appears, on the trial in the court below. But they have not been incorporated in the transcript: and though the witness says the bill was made from these prescriptions, yet there are many things in the bill which could not have figured in a prescription.

We think the opponent has not made out this portion of his account, either as a privilege or as an ordinary claim.

*Dr. Anfoux* figures upon the executor's account as a debtor of the succession, by note, for two hundred dollars, which is not disputed by the opposition, and must therefore be taken as an admitted fact. We only mention it, that it may not be inferred from our judgment upon the claim of opponent for medical services, that we reject any claim of the succession against him, if any claim should hereafter be sought to be enforced.

Judgment reversing the judgment of the District Court; that the account of executorship be amended, by placing thereon *Dr. Anfoux* as creditor with privilege for services in last illness, for the sum of sixty-eight dollars, and *Dr. Natili* as creditor with like privilege, for sixty-six dollars; that upon *Dr. Anfoux's* claim for medicines furnished from his apothecary's shop, there be judgment of non-suit; and that the costs of these oppositions in the District Court be borne by the estate, and those of this court by opponents and appellees.